**HEARING DATE AND TIME: March 21, 2012 at 9:30 a.m. (Eastern Time)**

John D. Roesser
Samuel S. Kohn
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Phone: 212-294-6700

*Proposed Attorneys for the Official*
*Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                 :

In re:                                         :

                                         :     **CHAPTER 11**

       EXETER HOLDING, LTD.         :

                                         :     **Case No. 11-77954 (AST)**

               Debtor.            :

                                         :

                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OBJECTION OF THE OFFICIAL UNSECURED CREDITORS' COMMITTEE TO
MOTION OF DEBTOR FOR AN INTERIM ORDER (I) AUTHORIZING AND
APPROVING POST-PETITION FINANCING; (II) GRANTING LIENS AND
SECURITY INTERESTS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV)
SCHEDULING FINAL HEARING, PURSUANT TO SECTIONS 105, 361, 362, 363 AND
364 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF
<u>BANKRUPTCY PROCEDURE 2002 AND 4001(C) AND (D)</u>**

       The Official Unsecured Creditors' Committee (the "Committee") in the chapter 11 case

of Exeter Holding Ltd., (the "Debtor") hereby submits this objection (the "Objection") to the

Debtor's motion of seeking an Interim Order (I) Authorizing and Approving Post-petition

Financing; (II) Granting Liens and Security Interests and Providing Super-priority

Administrative Expense Status; (III) Modifying the Automatic Stay; and (IV) Scheduling Final

Hearing, Pursuant to Section 105, 361, 362, 363 and 364 of the Bankruptcy Code and Federal

Rules of Bankruptcy Procedure 2002 and 4001(c) and (d) [Docket Nos. 40, 42] (the "DIP Motion").  In support of the Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      This is not a standard bankruptcy case in which an institutional lender is providing post-petition financing to maximize the value of its collateral.  Here, the party proposed to provide the post-petition financing, is an insider – 40 percent shareholder of the closely-held Debtor.  By all accounts, the Committee will be investigating a significant number of potential fraudulent transfers to and from insiders, including transfers to and from the proposed lender.  This alone raises significant concerns, however the Debtor has gone further and requested that the Court grant the insider lender super-priority claims and liens.  The Debtor should not be able to magically transform its chapter 11 obligations to fund administrative expenses by obtaining court-blessed super priority status.  Either the Debtor can fund this case on its own, or not, and if not it must be dismissed.

2.      Further, the Debtor has not only failed to provide a copy of the credit agreement as required by the Federal Rules of Bankruptcy Procedure, the DIP financing has not provided the Committee with any funding which suspiciously undercuts its ability to investigate the insider fraudulent transfers claims.  As if this were not enough to justify the denial of the DIP Motion, the Debtor also fails to provide any information as to how the proposed insider financing will benefit the estate and stifles any independent analysis by omitting a budget.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §1409.

## BACKGROUND

4.     On November 9, 2011, three (3) creditors of the Debtor filed an involuntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.  By Order of the Court, dated January 18, 2012, the Court entered an Order for Relief and the Debtor became a Debtor-in-Possession under chapter 11 of the Bankruptcy Code.

5.     On March 7, 2012, the Office of the United States Trustee Region 2 appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code.

6.     On February 22, 2012, the Debtor filed the DIP Motion seeking approval to obtain post-petition financing in the amount of up to $100,000.00 (the "Insider DIP Loan") and to incur such post-petition indebtedness with an initial advance of $50,000.00 including a $25,000 post-petition retainer for Debtor's counsel (the "Post-Petition Retainer").

7.     The Debtor has proposed to enter into a post-petition financing agreement to obtain the Insider DIP Loan with The Arnold and Sondra Frank Irrevocable Family Trust (the "Insider Lender"), a 40% shareholder of the Debtor.  The Debtor has stated that the Insider DIP Loan will "enable the Debtor to borrow up to $100,000.00 at the imputed interest rate published by the IRS at the time the Loan is approved by this Court."  DIP Motion Ex. 2, Haltman Aff. ¶ 5 [Docket Nos. 40, 42].

8.      The Debtor is seeking to provide the Insider Lender with super-priority claims and liens under sections 364, 503(b) and 507(b) of the Bankruptcy Code.

## OBJECTION

### I.   The Insider DIP Loan Should Not be Approved

9.      The party proposed to provide the post-petition financing, is an insider – 40 percent shareholder of this closely held Debtor.  Insider dealings are subjected to "rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein."  *Pepper v. Litton*, 308 U.S. 295, 306 (U.S. 1939); *see also In re Alpha Corp. of Virginia*, 979 F.2d 847 (4th Cir. 1992) (particular scrutiny will be give to transactions between the debtor and an insider.).

10.     Importantly, courts disallow proposed financing where its purpose is to benefit a particular party rather than the estate.  *See In re Ames*, 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990) ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."); *In re Tenney Village Co.*, 104 B.R. 562 (Bankr. D.N.H. 1989) (denying a proposed post-petition credit facility that provided advantages to the proposed lender, such that it would "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the Bank and the Debtor's principals who guaranteed its debt [and] runs roughshod over numerous sections of the Bankruptcy Code.").

11.     The Debtor's attempt to obtain super-priority under section 364(c)(1) of the Bankruptcy Code to the Insider DIP Loan must fail.  As a shareholder, the Insider Lender is on

bottom rung of the absolute priority ladder and through the requested super-priority status of the Insider DIP Loan is seeking to leap to the top rung in direct contradiction to the explicit priority structure set forth in the Bankruptcy Code.

12.     Further, courts have also considered, as part of the section 364 analysis, whether the financing agreement was "negotiated in good faith and at arm's length." *See In re WorldCom, Inc.*, No. 02-13533(AJG)., 2002 WL 1732646, at *3 (Bankr. S.D.N.Y. July 22, 2002); *see also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (applying a five factor test including asking whether proposed financing was "in the best interests of the estate and its creditors," whether terms were "fair, reasonable and adequate," and whether "the financing agreement was negotiated in good faith and at arm's length"); *In re Farmland Indus., Inc.*, 294 B.R. 855, 879-880 (Bankr. W.D. Mo. 2003) (applying similar standards and noting that factors should include whether financing was negotiated in arms' length and in good faith).

13.     The DIP Motion fails to include any information related to how the Insider DIP Loan was negotiated, except to include a provision in the proposed order concluding that "the DIP Facility was negotiated in good faith and at arms' length between the Debtor and the  . . ." DIP Motion, Ex. 3 [Docket Nos. 40, 42].

14.     By definition, this conclusion cannot be true, because an "arm's length" negotiation requires that the two parties be unrelated to, and independent from, one another.  See, e.g., Black's Law Dictionary 103 (7th ed. 1999) (defining "arm's length" as "[o]f or relating to dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power").  Here, Linda Haltman is a direct beneficiary of the Trust/Insider Lender and is also the daughter of Sandra Frank.  Thus, the Debtor appears to have

"negotiated" with itself to develop the proposed Insider DIP Loan.  Consequently, there have not been nor could there be an arm's length negotiation.

15.     Such an arm's length negotiation is of particular importance in this case as, upon information and belief, the Insider Lender and beneficiaries of the Insider Lender received avoidable transfers in the years before bankruptcy filing.  All potential preferential payments to the Insider Lender should be resolved before the Insider Lender is permitted to obtain a super-priority administrative claim or lien on a post-petition loan.  The actions of the insiders of the Debtor in the years leading up to the filing of the involuntary bankruptcy petition have raised the prospect of numerous actual and fraudulent conveyance claims and paint a picture of a group of insiders that have not acted within the scope of their fiduciary duties to the Debtor or their creditors.

16.     Thus, the Committee is faced with a number of troubling questions including: Are claims of the Insider Lender subject to equitable subordination under section 510(c)?  Did the Insider Lender receive avoidable preferences?  Are there fraudulent conveyance claims against the Insider Lender?  Do other causes of action exist on behalf of the estates against the Insider Lender?  As such, it is possible that the Insider Lender will owe the estate much more than the $100,000 of the proposed Insider DIP Loan, and should be repaying these funds to the Debtor's estate, rather than having the Insider Lender obtain super-priority status.

II.     **Proposed DIP Facility Is Not "Fair, Reasonable and Adequate" and Debtor has Failed to Establish How the Proposed Financing Will Benefit the Debtor's Estate**

17.     To obtain credit under to section 364(c), the Debtor bears the threshold burden of proving, in addition to unavailability of financing under subsection (b), that "[t]he credit transaction is necessary to preserve the assets of the estate; and [that] [t]he terms of the transaction are fair, reasonable, and adequate." *In re Barbara K. Enters*., No. 08-11474, 2008

WL 2439649, *10 (Bankr. S.D.N.Y. June 16, 2008) (citing *In re The Crouse Group, Inc.*, 71

B.R. 544, 549 (Bankr. E.D. Pa. 1987)).

18.     The Debtor has the burden of establishing how the proposed financing will benefit

the Debtor's estate.  As the court stated in *In re Aqua* the mere finding that credit is not available

elsewhere is not enough to justify the allowance of post-petition financing under section 364 of

the Bankruptcy Code.  *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991).  The court

must also consider whether the "credit acquired is of significant benefit to the debtor's estate and

that the terms of the proposed loan are within the bounds of reason, irrespective of the inability

of the debtor to obtain comparable credit elsewhere."  *Id.; See also In re Stoney Creek Tech's*,

*LLC*, 364 B.R. 882, 892 (Bankr. E.D. Pa. 2007)(denying post-petition financing where the

proposed loan was a "short term plan that will enable [the Debtor] to resuscitate its anemic

operations . . . with no reasonable prospects of a long term solution."); *In re the Crouse Group*,

*Inc.*, 71 B.R. 544, 551 (E.D. Pa. 1987) (denying proposed post-petition financing, among other

things, on the ground that the lender was not attempting to confer a benefit on the estate, but

rather was attempting merely to keep the debtor temporarily afloat in order to further the lender's

own purposes).

19.     First, there is no evidence that the Debtor endeavored to obtain alternate financing

on better terms or that the Debtor or its shareholders cannot loan the Debtor any amounts on an

unsecured basis, other than blanket statements by Linda Haltman.  [Haltman Aff. ¶¶ 3, 4 [Docket

No. 42-2].  *See In re the Crouse Group*, *Inc.*, 71 B.R. at 550) (denying proposed post-petition

financing, among other things, because of CEO's "feeble showing" that the debtor was incapable

of obtaining alternate funds).

20.     Second, the Debtor has done nothing to demonstrate that the Insider DIP Loan is in the best interests of the estate and its creditors.  There is no information in the DIP Motion that indicates how the $100,000 will benefit the estate, other than that $25,000 will be used for the Post-Petition Retainer and that an undisclosed amount will be used to "operate the Debtor-in-Possession." [Haltman Aff. ¶¶ 3 [Docket No. 42]

21.     Further, during this period the officers, directors and other employees, all of whom upon information and belief are insiders of the Debtor, are expected to continue to receive their salaries which are estimated to total $16,700 per month.  [Haltman Aff. ¶¶ 9, 10 [Docket No. 35].  Notably, the Debtor is winding down its business and no justification has been provided for why Arnold Frank, who is 80 years old, Linda Haltman, Michael Haltman, and Linda's two brothers, who don't even live in the New York area, all need to be paid salaries postpetition which in the aggregate total almost $17,000 per month.  [Haltman Aff. ¶¶ 9, 10 [Docket No. 35].

22.     Notably, the Court may review the salaries of officers of debtors-in-possession when the debtors-in-possession are closely-held corporations, officers are insiders of corporations, and propriety of officers bestowing upon themselves compensation which might be excessive and detrimental to creditors is at issue.  *In re Lyon & Reboli, Inc.*, 24 B.R. 152, 154 (Bankr. N.Y. 1982); *In re Zerodec Mega Corp.*, 39 B.R. 932, 933 (Bankr. Pa. 1984) (finding the bankruptcy court has ample authority to rule on the employment of the debtor's officers and fix their compensation.).

23.     The Debtor has an obligation to pay administrative expenses in full and cannot confirm a plan under section 1129 of the Bankruptcy Code if such expenses are not paid.  The Debtor has a further obligation to pay Debtor's professionals and the Committee's professionals

8

under sections 1102 and 330 of the Bankruptcy Code.  Thus, the Debtor must fund its chapter 11 obligations regardless of the Debtor's ability to obtain post-petition financing.  The Insider Lender cannot transform these obligations, through the extension of the Insider DIP Loan, into super-priority claims that allows it to advance its claims ahead of all other creditors.  If the Debtor or the Insider Lender cannot fund the administrative expenses and pay the professional fees without obtaining super-priority status then the Debtor does not belong in chapter 11.  Thus, the Court should deny the DIP Motion.

### III.    The Debtor has Failed to Include the Credit Agreement as Required by Bankruptcy Rule 4001(c)(1)(A)

24.    The DIP Motion does not comply with the requirements of Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Specifically, Bankruptcy Rule 4001(c)(1)(A) provides that a "motion for authority to obtain credit shall be made in accordance with Bankruptcy Rule 9014 and shall be accompanied by a copy of the credit agreement and a proposed form of order."  Fed. R. Bankr. P. 4001(c)(l)(A) (emphasis added). "The requirements of Rule 4001(c) address the need for the Court and affected parties to be able to decipher relevant terms of post-petition financing proposed under section 364."  *In re Lo'r Decks at Calico Jacks, LLC*, No. 09–09614–8–RDD, 2010 WL 1965894, *3 (Bankr. E.D.N.C., May 14, 2010).

25.    Throughout the proposed order, attached as an exhibit to the DIP Motion, the Debtor refers to a "DIP Credit Agreement" between it and the Insider Lender.  DIP Motion, Ex. 3 [Docket Nos. 40, 42].  However, the Debtor has not included the DIP Credit Agreement as an exhibit to the DIP Motion.  DIP Motion [Docket Nos. 40, 42].  The Debtor's failure to append the DIP Credit Agreement to the DIP Motion deprives the Court, the United States Trustee, the Committee and other parties in interest the opportunity to review the salient terms of the DIP

Credit Agreement. Without the DIP Credit Agreement, the Committee is unaware of the specific terms of the financing, including fees and charges, interest rate, terms of repayment as well as the extent of all priority and/or liens to be granted in connection with the financing, and cannot adequately review and object to the terms of the DIP Credit Agreement. This is particularly troubling as the DIP Motion proposes to grant super-priority claims and liens to the Insider Lender.

26.     Consequently, the Court should deny the DIP Motion, or at minimum, require the Debtor to file a final form of the proposed DIP Credit Agreement, and adjourn the hearing on the DIP Motion so that the Court and Committee may review and analyze the terms of the financing.

## IV.     No Budget has Been Provided as is Required by Section 1 (b) of the Guidelines for the Eastern District of New York

27.     The Eastern District of New York guidelines set forth in the Administrative Order No. 558 (April 15, 2010) (the "Order 558") require under section 1(b) that the Debtor include certain previsions in a DIP Motion including a budget. Additionally, under section 7 of Order 558 the Court will examine the adequacy of a budget "[i]f the debtor will be subject to a budget under a proposed . . . financing order." Further, as stated above, the Court should be able to review any proposed postpetition expenditures, including, the salaries of the insiders. *In re Lyon & Reboli, Inc.*, 24 B.R. at 154.

28.     Further, as the precise terms of the DIP Credit Agreement remain undisclosed it is impossible to say if they are in compliance with section 7 of Order 558. The Debtor's statutory schedules reflect that there is only several hundred dollars in cash remaining. Schedule B [Docket No. 32]. As a result of the extreme scarcity of available funds, regardless of whether or not they are in direct violation of section 7 of Order 558, the lack of budget raises serious

questions as to how the administrative expenses and professional fees and disbursements will be paid as required by sections 327, 330, 503 and 1102 of the Bankruptcy Code.

29.     Without a budget the Court, the U.S. Trustee, the Committee and other parties in interest are unable to evaluate the reasonableness of any postpetition expenditures or the viability of this chapter 11 case. Consequently, the Court should deny the DIP Motion or at minimum, require the Debtor to file a budget with this Court, and provide detailed explanations for each line item of expenditure, before any such financing may be approved.

**V.     Proposed DIP Facility Provides the Debtor's Counsel with a De Facto Carve Out While Failing to Include any Required Carve Outs**

30.     Pursuant to the Local Bankruptcy Rules for the Eastern District of New York Bankruptcy (the "Local Rules") Rule 4001-5 and Order 558 section 1 the Debtor must include in the DIP Motion a provision stating a justification for the "absence of any carve-out provision . . ." Additionally, under section 4 of Order 558, the Debtor must include information about any "disparate" treatment in a carve out between the Debtor's counsel and Committee's counsel.

31.     Further, courts have stressed the general importance of including a reasonable carve-out for committee professionals. For example, the United States Bankruptcy Court for the Southern District of New York has stated, "[a] failure to provide a reasonable sum for professionals has, in other cases before this Court, left estates, creditors' committees and trustees without the assistance of counsel and the Court without the adversary system contemplated by Congress in 1978 when it, in enacting the Bankruptcy Code, recast the role of bankruptcy judges principally to one of resolving disputes." *In re Ames*, 115 B.R. at 40. "Absent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced." *Id*. at 38.

32.     The DIP Motion proposes to grant the Insider Lender super-priority claims and liens, and provides for funding of the Post-Petition Retainer which only benefits the Debtor's

counsel.  The DIP Motion does not provide for a "carve out" for any professional fees.  The Post-Petition Retainer functions as a de facto carve out for Debtor's counsel, resulting in unequal treatment of the Committee's counsel which the Debtor has failed to justify.  Notably, there is also no carve out for fees required by 28 U.S.C. § 1930.

33.    The disparate treatment of the Committee's counsel, through the omission of any funding for Committee's professionals, while providing the Post-Petition Retainer for Debtor's counsel, appears to be a transparent attempt to quash the Committee's ability to properly investigate the fraudulent transfer issues related to insiders, frustrating the Committee's statutory obligations under 1103 of the Bankruptcy Code.

## RESERVATION OF RIGHTS

34.    The Committee expressly reserves the right to amend or supplement this Objection, to file additional objections, and to introduce evidence supporting this Objection and any other objections at any hearing on the DIP Motion.

**CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that this Court enter an order (1) denying the DIP Motion and (2) granting the Committee such other relief as is just and appropriate under the circumstances.

Dated:  New York, New York
       March 14, 2012

By: /s/ Samuel S. Kohn
John D. Roesser, Esq.
Samuel S. Kohn, Esq.

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
skohn@winston.com

*Proposed Attorneys for the Official*
*Committee of Unsecured Creditors*

13