| | |
|---|---|
| **LaMonica Herbst & Maniscalco, LLP**<br>3305 Jerusalem Avenue<br>Wantagh, New York 11793<br>(516) 826-6500<br>Jordan Pilevsky, Esq. | Hearing Date:   October 3, 2017 at 10:30 a.m.<br>Objections Due:  September 26, 2017 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                         Chapter 11
                                                                                    Case No. 11-77954 (AST)
EXETER HOLDING, LTD,

                                    Debtor.
------------------------------------------------------------x

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:
                                                                                    Chapter 7
VIRGINIA PRINCIPI a/k/a                                         Case No. 16-71481 (AST)
VIRGINIA O'CONNOR
a/k/a VIRGINIA O'CONNOR PRINCIPI,

                                    Alleged Debtor.
------------------------------------------------------------x

**NOTICE OF THE PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING AND APPROVING AN AGREEMENT OF SALE DATED AUGUST 25, 2017 FOR THE SALE OF 107 MONTAUK HIGHWAY, AMAGANSETT, NEW YORK 11930, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, WITH SUCH LIENS, CLAIMS AND ENCUMBRANCES TO ATTACH TO THE PROCEEDS OF SALE AND (B) CONFIRMING THE SALE TO THE PURCHASER**

**PLEASE TAKE NOTICE,** that on **October 3, 2017 at 10:30 a.m.**, or as soon thereafter as counsel may be heard, a hearing (the "**Hearing**") will be held before the Honorable Alan S. Trust, United States Bankruptcy Judge, at the United States Bankruptcy Court, Eastern District of New York, located at 290 Federal Plaza, Central Islip, New York 11722, upon the Motion (the "**Motion**") of Gary F. Herbst, Esq., in his capacity as the plan administrator (the "**Plan Administrator**") of the bankruptcy estate of Exeter Holding Ltd. ("**Exeter**") and in furtherance of a Stipulation and Order of Settlement dated August 16, 2016 entered in the bankruptcy estate

of Virginia Principi a/k/a Virginia O'Connor a/k/ Virginia O'Connor Principi ("**Principi**"), by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking the entry of an Order, pursuant to 11 U.S.C. §§ 105(a), 363, 704 and 724 (the "**Bankruptcy Code**") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (a) authorizing and approving an agreement of sale dated August 25, 2017 (the "**Sale Agreement**") by and between the (i) Plan Administrator and (ii) Andrew Berman and Mollie Cohen (collectively, the "**Purchaser**") which provides for the sale (the "**Sale**") of the real property located at, and known as, 107 Montauk Highway, Amagansett, New York 11903 (the "**Real Property**"), free and clear of all liens, claims and encumbrances (the "**Liens**"), with such Liens to attach to the proceeds of Sale in the order and priority as they existed on the date Exeter was filed into bankruptcy; (b) confirming the Sale of the Real Property to the Purchaser for the purchase price of $1,700,000 (the "**Purchase Price**"); and (c) granting such other and further relief as this Court deems necessary.

**PLEASE TAKE FURTHER NOTICE,** that objections ("**Objections**") to the relief requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and Rules, state with particularity the grounds therefor and be filed with the Court, with a courtesy copy to the Chambers of the Honorable Alan S. Trust, United States Bankruptcy Judge, and served upon, so as to be received by, LaMonica Herbst & Maniscalco, LLP, the attorneys for the Plan Administrator, Attn: Jordan Pilevsky, Esq., **no later than September 26, 2017**, as follows: (a) (i) through the Bankruptcy Court's electronic filing system which may be accessed through the internet at the Bankruptcy Court's website at www.nyeb.uscourts.gov; and (ii) in portable document format (PDF) using Adobe Exchange Software for conversion; or (b) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on a

2

diskette in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned from time to time without further notice other than announcement of such adjournment in open Court.

Dated: August 25, 2017
      Wantagh, New York

                      **LaMonica Herbst & Maniscalco, LLP**
                      Attorneys for the Plan Administrator

            By:    *s/ Jordan Pilevsky*
                    Jordan Pilevsky, Esq.
                    A Partner of the Firm
                    3305 Jerusalem Avenue, Suite 201
                    Wantagh, New York 11793
                    (516) 826-6500

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　　Case No. 11-77954 (AST)
EXETER HOLDING, LTD,

　　　　　　　　　　　　Debtor.
-------------------------------------------------------------x

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
VIRGINIA PRINCIPI a/k/a　　　　　　　　　　　　Case No. 16-71481 (AST)
VIRGINIA O'CONNOR
a/k/a VIRGINIA O'CONNOR PRINCIPI,

　　　　　　　　　　　　Alleged Debtor.
---------------------------------------------------------------x

**THE PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING AND APPROVING AN AGREEMENT OF SALE DATED AUGUST 25, 2017 FOR THE SALE OF 107 MONTAUK HIGHWAY, AMAGANSETT, NEW YORK 11930, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, WITH SUCH LIENS, CLAIMS AND ENCUMBRANCES TO ATTACH TO THE PROCEEDS OF SALE AND (B) CONFIRMING THE SALE TO THE PURCHASER**

Gary F. Herbst, Esq., in his capacity as the plan administrator (the "**Plan Administrator**") of the bankruptcy estate of Exeter Holding Ltd. ("**Exeter**") and in furtherance of a Stipulation and Order of Settlement dated August 16, 2016 entered in the bankruptcy estate of Virginia Principi a/k/a Virginia O'Connor a/k/ Virginia O'Connor Principi ("**Principi**"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, in support of his motion (the "**Motion**") seeking the entry of an Order pursuant to 11 U.S.C. §§ 105(a), 363, 704 and 724 (the "**Bankruptcy Code**") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy

4

Procedure (the "**Bankruptcy Rules**"): (a) authorizing and approving an agreement of sale dated August 25, 2017 (the "**Sale Agreement**") by and between the (i) Plan Administrator and (ii) Andrew Berman and Mollie Cohen (collectively, the "**Purchaser**")[1] which provides for the sale (the "**Sale**") of the real property located at, and known as, 107 Montauk Highway, Amagansett, New York 11903 (the "**Real Property**"), free and clear of all liens, claims and encumbrances (the "**Liens**"), with such Liens to attach to the proceeds of Sale in the order and priority as they existed on the date Exeter was filed into bankruptcy; (b) confirming the Sale of the Real Property to the Purchaser for the purchase price of $1,700,000 (the "**Purchase Price**"); and (c) granting such other and further relief as this Court deems necessary, respectfully sets forth and represents as follows:

## Jurisdiction and Statutory Predicates

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334. Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein, include, *inter alia,* Sections 105(a), 363, 704 and 724 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

## Background

### A. Exeter's Bankruptcy Case

3. On November 9, 2011, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against Exeter in United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**").

---

[1] Although there are two purchasers of the Real Property, the Motion shall refer to them in the singular form in order to be consistent with the Sale Agreement.

4. On January 18, 2012, the Bankruptcy Court entered an Order for Relief under Chapter 11 of the Bankruptcy Code.

5. By Order dated July 8, 2013 (the "**Exeter Plan Confirmation Order**"), the Bankruptcy Court confirmed Exeter's amended plan of liquidation (the "**Exeter Plan**").

6. The Exeter Plan provided for the appointment of the Plan Administrator, which appointment was approved by the Bankruptcy Court in the Exeter Plan Confirmation Order. In accordance with the Section 6 of the Exeter Plan, the Plan Administrator succeeded to the powers as would have been applicable to Exeter's officers, directors and shareholders. The Plan Administrator has the authority to take all actions that may be, or could have been, taken by Exeter's officers, directors and shareholders.

7. Since his appointment, the Plan Administrator has actively liquidated Exeter's mortgage and loan portfolio, participated in various litigations pending in the Bankruptcy Court, the District Court and courts of the State of New York which include the commencement of seventeen adversary proceedings. Indeed, the Plan Administrator has successfully resolved several litigations and liquidated several assets of Exeter for the benefit of Exeter's estate and creditors.

**B.**    **The Real Property**

8. By deed dated March 20, 2001, and recorded on May 8, 2001, Principi purchased the Real Property.

9. A review of the transactional history of encumbrances on the Real Property reflects a long history of numerous mortgages, assignments, subordinations, spreader agreements, partial releases and lienholder agreements. As a result of the mortgage transactions more specifically detailed below, Nationstar Mortgage, LLC ("**Nationstar**") holds a first priority

mortgage secured lien against the Real Property and Exeter holds the second and third mortgages secured against the Real Property.

10. Exeter made a loan in the original principal amount of $900,000 to Northfork Resources and Principi Properties LLC. This loan is secured by a mortgage dated September 8, 2005 and recorded on October 24, 2005 (the "**Exeter Mortgage**"). The Exeter Mortgage was signed by Richard J. Principi as president of Northfork Resources, Inc. and both Richard J. Principi and Virginia Principi on behalf of Principi Properties LLC. The Exeter Mortgage was originally secured against four (4) parcels of land in eastern Long Island which did not include the Real Property.

11. By mortgage dated April 4, 2006 and recorded on May 10, 2006, Reliable Mortgage Bankers Corp. extended a loan secured against the Real Property in the original principal amount of $999,000. After several intervening assignments, this mortgage is presently held by Nationstar (the "**Nationstar Mortgage**"). The Nationstar Mortgage is the first position secured lien against the Real Property. On November 15, 2013, Nationstar commenced a foreclosure proceeding in Suffolk Supreme under Index 063910/2013. Upon information and belief, the amount of approximately $1.35 million is owed on account of the Nationstar Mortgage.

12. Dominion Financial Corporation ("**Dominion**") made a loan in the original principal amount of $1,064,000 to Principi Properties LLC, Virginia Principi and Principi Family Properties. This loan is secured by a mortgage dated August 30, 2006, recorded on September 25, 2006, which is secured against several real properties including the Real Property. As a result, Dominion held the second secured lien (after Nationstar) against the Real Property.

13. By agreement dated November 2009 and recorded on December 9, 2009 made between Exeter, State Bank of Long Island, Northfork Resources, Inc., Principi Properties LLC and Virginia Principi, the Exeter Mortgage was spread to cover the Real Property (the "**Spreader Agreement**").

14. By agreement dated November 2, 2009 and recorded on December 9, 2009 made between Dominion and Exeter, the parties agreed that notwithstanding their respective liens all proceeds from the Real Property above the Nationstar Mortgage would be subject to a certain sharing between Dominion and Exeter (the "**Lienholder's Agreement**"). As a result of the Spreader Agreement and the Lienholder's Agreement, the Exeter Mortgage was the third secured mortgage lien against the Real Property (after Nationstar and Dominion) and held sharing rights with Dominion in the second secured lien against the Real Property.

15. Prior to the Exeter bankruptcy filing, on May 25, 2011, Déjà Vu Act II, Inc. ("**Déjà Vu**") obtained a judgment against Exeter in the amount of $5,248,592.72. During the pendency of the Exeter bankruptcy, Déjà Vu and Exeter entered into a stipulation dated June 20, 2012 (the "**Déjà Vu Stipulation**"), which provided that the net recovery on the Exeter Mortgage from a sale of both the Real Property and another real property located 64600 Main Street, Southold New York (the "**Southold Property**")[2] shall be disbursed with the first $300,000 to Déjà Vu and any remaining amounts to Exeter. By Order dated June 26, 2012, the Bankruptcy Court approved the Déjà Vu Stipulation in the Exeter bankruptcy case.

---

[2] By deed dated August 30, 2006, and recorded on September 25, 2006, Principi Properties, LLC purchased the Southold Property. Virginia Principi's husband, Richard Principi, Jr. is the managing member of Principi Properties, LLC. As a result of intervening mortgages, assignments and subordination agreements, North Fork Lending, LLC held first and second priority notes and mortgages secured against the Southold Property. Exeter held a third priority interest in the Southold Property.

16. In or around May 2012, Dominion assigned its interest in the Dominion Mortgage to North Fork Lending, LLC ("**NFL**"). NFL held a first and second lien against the Southold Property. Exeter held a third lien against the Southold Property. As a result, and in accordance with the Lienholder's Agreement, NFL and Exeter held a *pari passu* second priority lien against the Real Property.

17. Pursuant to a stipulation dated in or around February 2014, NFL (the "**NFL Stipulation**"), the Plan Administrator, on behalf of Exeter, and Déjà Vu entered into an agreement by which Exeter released its lien against the Southold Property and NFL assigned its interest in the Real Property to Exeter. The NFL Stipulation was approved by Order of the Bankruptcy Court dated March 31, 2014.

18. Pursuant to a stipulation dated August 2, 2016, the Plan Administrator, on behalf of Exeter, and Déjà Vu modified the Déjà Vu Stipulation and agree, among other things, that from the gross recovery related to the Real Property, after payment to senior liens and payment of Exeter's legal fees and expenses related to the Real Property, the sale proceeds shall be subject to a fifty-fifty split between the Exeter estate and Déjà Vu.

19. Based on Exeter's books and records, the combined payoff for the Exeter's resulting second and third mortgage liens secured against the Real Property is in excess of $2.0 million.

C. **The Principi Bankruptcy**

20. On April 5, 2016, the Plan Administrator filed an involuntary Chapter 7 petition against Principi with an undersecured claim at the time in excess of $1.0 million. On April 26, 2016, Principi filed an Answer contesting the involuntary petition.

9

21. By Order dated June 2, 2016 in the Principi bankruptcy case, the disputes between the Plan Administrator and Principi were referred to mediation (the "**Mediation**").

22. On July 6, 2016, Mediation was conducted and a resolution was reached. The terms of the resolution were memorialized in a stipulation by and between (a) the Plan Administrator; (b) Déjà Vu; (c) Principi; (d) Richard J. Principi; (e) Yvonne Velazquez; (f) Emeterio Velazquez; (g) Camille Stewart; (h) Northfork Resources, Inc. (i) Principi Properties LLC; and (j) Principi Family Properties, LLC (the "**Stipulation**").

23. The Stipulation provided for a consensual sale of the Real Property with a sharing of sale proceeds. Specifically, the Plan Administrator agreed to designate Principi's choice of broker, Douglass Elliman Real Estate, East Hampton, New York (the "**First Broker**") with an exclusive period to market and sell the Real Property through November 30, 2016. The First Broker listed the Real Property with an asking price of approximately $2.1 million and conducted open houses over a 4-month period. However, the First Broker failed to solicit a single offer for the purchase of the Real Property. The Plan Administrator's counsel would frequently follow up with the First Broker to inquire about any offers, even those potentially low in range. No offer was ever conveyed to the Plan Administrator.

24. As a result, and in accordance with the Stipulation, after the First Broker's exclusivity period expired, the Plan Administrator began interviewing brokers and auctioneers to list the Real Property for sale. The Plan Administrator retained Maltz Auctions (the "**Second Broker**"). The Second Broker conducted a robust marketing program with open houses and a public auction sale held on May 24, 2017 (the "**Auction Sale**"). Although the Auction Sale was well attended with registered bidders, the highest bid for the Real Property was only approximately $1.2 million. Given that Nationstar is owed in excess of the high bid from the

10

Auction Sale, the Plan Administrator was unable to confirm the sale to the successful bidder from the Auction Sale.

25. Thereafter, the Plan Administrator retained a third broker, Jordan Glass LLC (the "**Third Broker**") to market and sell the Real Property.

**D.    The Sale Agreement**

26. The Third Broker brought the Purchaser to view and inspect the Real Property and, after negotiations, the Plan Administrator accepted an offer of $1,700,000 to purchase the Real Property. After one full year, and three brokers marketing the Real Property, the Plan Administrator believes that the Purchaser made the highest and best offer for the Real Property. The Sale Agreement sets forth the terms and conditions under which the Purchaser will acquire the Real Property and all parties are directed to review the Sale Agreement for its precise terms, a copy of which is annexed as **Exhibit "A"**.

27. In pertinent part, the Sale Agreement provides for a purchase price of $1,700,000, all cash, without any financing contingency. The down payment of $170,000 has already been received by the Plan Administrator and is being held in the Plan Administrator's account pending the Bankruptcy Court's approval of the Sale in this matter. The Purchaser is obligated to tender the balance of the Purchase Price at the closing on the Real Property. Further, the Purchaser will be obligated to pay transfer taxes (if applicable) the mansion tax and costs associated with the preparation and filing of any required recording documents. In addition to the Purchase Price, the Purchaser has also agreed to pay 1.0% ($17,000) of the Third Broker's 6.0% commission.

28. The Sale Agreement further states that the Real Property shall be sold "as is", "where is" free and clear of all the Liens, with such Liens to attach to the proceeds of the Sale in

11

the same amount and priority as they existed as of the date Exeter was filed into bankruptcy in accordance with Section 363 of the Bankruptcy Code.

29. Moreover, the Sale Agreement provides for terms and procedures for closing on the Sale of the Real Property. The Purchaser shall close on the Sale on a date which is not later than thirty (30) calendar days from the date of entry of an Order of the Bankruptcy Court confirming the sale of the Real Property to the Purchaser (the "**Closing Date**"), time being of the essence.

30. Upon Bankruptcy Court approval, the Plan Administrator is ready, willing and able to move forward with the Sale and to close on the Real Property.

31. Based on the foregoing, the Plan Administrator submits that approval of the Sale Agreement is beneficial to the estates and that the relief herein should be granted.

**E.**   **Notice**

32. Under Bankruptcy Rules 2002(a) and (c) and 6004, the Plan Administrator is required to notify creditors and certain other parties in interest of the Sale of the Real Property. The Plan Administrator submits that service of this Motion, including exhibits thereto, on all known creditors and the parties listed below, complies with Bankruptcy Rule 2002(c). The Plan Administrator intends to serve the Motion, with exhibits, by first class mail upon: (i) the Office of the United States Trustee; (ii) Nationstar and its counsel; (iii) Principi and her counsel; (iv) Déjà Vu and its counsel; (v) all parties to the Stipulation; (vi) the Purchaser and counsel; (vii) all requisite taxing authorities; (viii) all those known parties who may have an interest in the Real Property; (ix) all those persons who have formally appeared and requested service in this proceeding pursuant to Bankruptcy Rule 2002 or any other party required to be served pursuant

to an order entered by this Bankruptcy Court; and (x) all known creditors of the Exeter and Principi estates.

## Legal Authority for the Relief Requested

### F.     The Sale Should be Approved

33. The Plan Administrator submits that the Sale contemplated herein in accordance with the Sale Agreement will provide the estate with an opportunity to realize the greatest value from the Real Property.

34. Section 105(a) of the Bankruptcy Code provides, in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

35. Section 704(a)(1) of the Bankruptcy Code provides that ta trustee shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).

36. Section 724(b) of the Bankruptcy Code provides, in pertinent part, that "[p]roperty in which the estate has an interest and that is subject to a lien that is not avoidable under this title . . . and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed – (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien; (2) second, to any holder of a claim of a kind specified in section 507(a)(1)(C) . . . to the extent of the amount of such allowed tax claim that is secured by such tax lien; (3) third, to the holder of such tax lien,to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection . . . ."

37. Further, Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, . . . ." 11 U.S.C. § 363(b)(1).

38. The United States Court of Appeals for the Second Circuit, in applying Section 363 of the Bankruptcy Code, has required that approval of such sales be based upon the sound business judgment of the trustee. See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (quoting Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)); In re Chateaugay Corp., 973 F.2d 141, 145 (2d Cir. 1992); Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated." (citations omitted)). The terms of such sale are also generally within the sound discretion of the trustee. See In re Dial-A-Mattress Operating Corp., 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009); In re Ionosphere Clubs, 100 B.R. 670 (Bankr. S.D.N.Y. 1989).

39. The Plan Administrator has substantial business justification for the proposed Sale of the Real Property. The Plan Administrator believes that the Sale in accordance with the terms of the Sale Agreement will enable the estate to provide for an expeditious sale of the Real Property that will benefit the Exeter estate and its creditors.

40. The instant Sale is permissible as Bankruptcy Rule 6004(f)(1) provides in relevant part that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Chapter 7 Trustees often exercise authority to sell debtors' assets. In re Stein, 281 B.R. 845, 848 (Bankr. S.D.N.Y. 2002 (discussing the chapter 7 trustee's right to sell the assets of the

14

debtor under the Bankruptcy Code); In re Bakalis, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (explaining the chapter 7 trustee's authority to conduct the sale of the debtor's assets).

41. For these reasons, the Plan Administrator, in the exercise of his reasonable business judgment, recommends that the Bankruptcy Court authorize and approve the Sale Agreement and permit the Plan Administrator to proceed with a closing in accordance with the Sale Agreement.

## G.     The Real Property Should be Sold Free and Clear of Liens

42. In accordance with Section 363(f) of the Bankruptcy Code and the Sale Agreement, the Plan Administrator requests that he be authorized to sell the Real Property free and clear of the Liens with such Liens to attach to the proceeds of Sale.

43. Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property under the Bankruptcy Code free and clear of liens, claims, encumbrances and other interests, provided that: (a) applicable non-bankruptcy law permits the sale of the property free and clear of such interests; (b) the entity holding the lien, claim, encumbrance or interest consents to the sale; (c) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f). See Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC), 423 F.3d 166, 169 n. 3 (2d Cir. 2005) (holding section 363 permits sales of assets free and clear of claims and interests, thus allowing purchasers to acquire assets without any accompanying liabilities); In re Dundee Equity Corp., No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in disjunctive, such that the sale of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

44. For the reasons already set forth above, the Plan Administrator, in the exercise of his reasonable business judgment, recommends that the Bankruptcy Court approve the Sale of the Real Property.

### H. The Purchaser Should Be Entitled to Protections Under 11 U.S.C. § 363(m)

45. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

32. While the Bankruptcy Code does not define "good faith", the United States Court of Appeals for the Second Circuit has held that:

> [The] good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; . . . A purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997) (citations omitted).

33. The Plan Administrator submits that the Sale pursuant to the Sale Agreement will be conducted in an arm's length transaction, in which the Plan Administrator and the Purchaser will have, at all times, acted in good faith under applicable legal standards. In furtherance of Section 363(m) of the Bankruptcy Code, the terms as set forth in the Sale Agreement are designed to ensure that maximum value is to be received by the Plan Administrator. As such, the Sale Agreement has been proposed by the Plan Administrator in good faith. Accordingly, the

Plan Administrator submits that the Purchaser is entitled to the protections of good faith purchasers under Section 363(m) of the Bankruptcy Code.

34.     In accordance with the Plan Administrator's duties and the circumstances of this case, a prompt sale of the Real Property is demonstrably the best way to preserve and maximize the value of the Property for the benefit of creditors. Accordingly, a sound business reason exists for the sale of the Real Property.

**I.     Bankruptcy Rule 6004(h) Should Be Waived**

35.     Under Bankruptcy Rule 6004(h), an order authorizing the sale of property is "stayed until the expiration of 14 days after entry of the order" authorizing such sale. Fed. R. Bankr. P. 6004(h). The Plan Administrator requests that the Bankruptcy Court order that such stay shall not apply with respect to the sale of the Real Property.

36.     A waiver of the stay requirement under Bankruptcy Rule 6004(h) will relieve the estate of any financial burdens associated with the sale of the Real Property and will reduce the expenditure of additional funds for the benefit of the estate and its creditors. Specifically, it will reduce costs associated with having to winterize the Real Property. As such, the Plan Administrator respectfully requests that any order approving the sale of the Real Property include a waiver of the stay under Bankruptcy Rule 6004(h).

## Conclusion

37.     Based upon the foregoing the Plan Administrator respectfully requests entry of an Order, pursuant to, 11 U.S.C. §§ 105(a), 363, 704 and 724 and Bankruptcy Rules 2002, 6004 and 9016: (a) authorizing and approving the Sale Agreement; (b) confirming the Sale to the Purchaser for the Purchase Price; and (iii) granting such other and further relief as this Court deems necessary.

38. No previous request for the relief sought herein has been made by the Plan Administrator to this or to any other Court.

**WHEREFORE**, the Plan Administrator respectfully requests entry of an Order, substantially in the form annexed hereto as **Exhibit "B"**, granting the relief requested in the Motion and for such other relief as this Court deems just and proper.

Dated: August 25, 2017
      Wantagh, New York

                                **LaMonica Herbst & Maniscalco, LLP**
                                Attorneys for the Plan Administrator

                     By:    ***s/ Jordan Pilevsky***
                                Jordan Pilevsky, Esq.
                                A Partner of the Firm
                                3305 Jerusalem Avenue, Suite 201
                                Wantagh, New York 11793
                                (516) 826-6500

*M:\Documents\Company\Cases\Exeter Holding, LTD\Real Property Portfolio\Amaganett\Jordan Glass Deal\Sale Motion\NOM and Motion.doc*